*905 OPINION
Justice INDEGLIA, for the Court.
The applicant Alexander Rose (Rose or applicant), appeals from a Superior Court judgment denying his petition for a writ of habeas corpus and his application for post-conviction relief.[1] On appeal, the applicant argues that the hearing justice erred by miscalculating the length of his sentence. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.
I
Facts and Travel
The pertinent facts in this matter are not in dispute. On December 28, 1992, Rose was incarcerated at the Adult Correctional Institutions (ACI) while awaiting the disposition of an allegation of first-degree child molestation. On March 14, 1994, Rose pled nolo contendere to one count of first-degree child molestation. The sentencing justice imposed the mandatory minimum sentence under G.L.1956 § 11-87-8.2 of twenty years,[2] with eight years to serve, and the remaining twelve years suspended with twelve years probation. At the plea hearing, the sentencing justice engaged in the following colloquy with Rose:
“THE COURT: You heard the [state’s] recommendation of a 20-year sentence, eight years to serve. You’ll receive credit for time served retroactive to December 23, 1992. What I want to make sure you understand is that after you’re released from that eight years to serve, you still have a 12-year suspended sentence hanging over you and 12 years probation. Do you understand that?
“[Rose]: I understand.
“THE COURT: When I say, ‘hanging over you,’ I just mean that for 12 years after your release you are going to be on probation[.] [D]uring that period * * * you will comply with the terms and conditions of probation. If * * * a judge after a hearing were to find that you violated probation, that judge could then revoke the 12-year suspended sentence and you could be ordered to serve up to 12 years at the ACI. You understand all that?
“[Rose]: Yes.
it ❖
“THE COURT: In this matter, the defendant is sentenced to 20 years at the ACI, eight years to serve, credit retroactive to December 23, 1992, the balance, 12 years, suspended, and upon release the defendant is placed on 12 years probation.” (Emphasis added.)
A judgment of conviction and commitment entered on March 17,1994.[3]
Rose was released from the ACI on parole on December 17, 1997, less than four years after the imposition of his sentence. In addition to receiving credit for the fifteen months he was confined while *906 awaiting disposition of his case, Rose also earned credits under G.L.1956 § 42-56-24 for good behavior and participation in institutional industries. Rose completed his period of parole without incident sometime in July 1999. To date, he has not violated the terms of his probation.
On October 13, 2010, Rose filed a petition for a writ of habeas corpus, in which he requested that the Superior Court order his discharge from the allegedly unlawful custody of his probation officer. Thereafter, on October 25, 2010, Rose moved to amend his pleadings to add an application for postconviction relief under G.L.1956 § 10 — 9.1—1(a)(5).[4] In a memorandum in support of his petition and application, he asserted that his period of probation had ended on December 17, 2009, twelve years after the date of his release from the ACI. Rose alternatively argued that, if his sentence did not end on December 17, 2009, it would terminate in July 2011, twelve years after his successful completion of parole. The state objected to Rose’s petition, arguing that Rose’s period of probation does not end until March 2014, twenty years from the date his sentence was imposed.
A Superior Court hearing justice denied Rose’s petition for habeas corpus and his application for postconviction relief in a written decision filed on September 22, 2011. In her decision, the hearing justice concluded that Rose’s probation placed him under an implied obligation to keep the peace and be of good behavior for the full length of his sentence. She stated that Rose’s'“‘20-year full sentence’ began on March 14, 1994 and [runs] until March 13, 2014.” In reaching her conclusion, the hearing justice specifically reasoned that Rose’s “good time credit does not change the beginning date and end date of [his] full sentence.” She did not expressly address whether Rose’s credits for time served or his time spent on parole could alter the end date of his sentence.
An order denying Rose’s petition for habeas corpus and his application for postconviction relief entered on October 19, 2011. Final judgment entered on April 3, 2012. The applicant timely filed a notice of appeal on September 27, 2011.[5]
II
Standard of Review
To decide this appeal, we must construe several statutory provisions. “[T]his Court reviews questions of statutory interpretation de novo.” McCulloch v. McCulloch, 69 A.3d 810, 819 (R.I.2013) (quoting Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1078 (R.I.2013)). “[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.” State v. Hazard, 68 A.3d 479, 485 (R.I.2013) (quoting Alessi v. Bowen Court Condominium, 44 A.3d 736, 740 (R.I.2012)). “[0]ur ultimate goal is to give *907 effect to the purpose of the act as intended by the Legislature.” Swain v. Estate of Tyre ex rel. Reilly, 57 A.3d 283, 289 (R.I.2012) (quoting Webster v. Perrotta, 774 A.2d 68, 75 (R.I.2001)).
Ill
Discussion
On appeal, Rose argues that the hearing justice erred in concluding that his sentence could not end before March 13, 2014. He does not dispute that he is under an obligation to keep the peace and be of good behavior for the full length of his sentence. Rose instead asserts that his full sentence expired earlier than March 13, 2014 because the credits that he received for time served and good time[6] accelerated the start date, and consequently, the end date of his probationary period. Although he initially made a similar argument about his grant of parole, he conceded at oral argument that his release on parole did not have any effect on the end date of his probationary period. Accordingly, we are left with two questions to resolve in this appeal: What effect, if any, do Rose’s credits for (1) good time and (2) time served have on the total length of his sentence?
A
Good-Time Credits Under G.L.1956 § 42-56-24
Rose’s sentence is the result of the interplay of several statutory provisions. In particular, “[t]he Legislature has provided by statute several methods of mitigating a defendant’s sentence: suspension, probation, good-time credits, [and] parole,” among others. State v. O'Rourke, 463 A.2d 1328, 1331 (R.I.1983). Good-time credits are available in “[m]ost jurisdictions * * * for satisfactory conduct while incarcerated. This credit * * * shortens the term to be served.”[7] Neil P. Cohen, 2 The Law of Probation and Parole, § 28:26 at 28-42 (2d ed.1999); see generally Michael M. O’Hear, Solving the Good-Time Puzzle: Why Following the Rules Should Get You Out of Prison Early, 2012 Wis. L.Rev. 195, 195, 200 (2012) (noting that “[a]t least twenty-nine states and the federal government currently offer prison inmates early release, sometimes by many years, in return for good behavior”). Good-time credit serves two primary purposes: it incentivizes orderly behavior while incarcerated. In addition, since good-time credit “results-in early release for many inmates[, it] reduces prison overcrowding.” Neil P. Cohen, 1 The Law of Probation and Parole, § 4:20 at 4-37, § 4:28 at 4-48 (2d ed.1999); see also Cecei-la Klingele, Changing the Sentence Without Hiding the Truth: Judicial Sentence Modification as a Promising Method of Early Release, 52 Wm. & Mary L.Rev. 465, 487-91 (2010) (characterizing good-time credit as a traditional method of early release that encourages good behavior and reduces overcrowding).
*908 Our Legislature has endowed the Department of Corrections (DOC) in § 42-56-24 with the authority to mitigate a defendant’s sentence by rewarding a prisoner’s good behavior and industriousness with credits towards his or her sentence. The version of § 42-56-24 in effect in 1994[8] provided:
“(a) The director or his or her designee shall keep a record of the conduct of each prisoner, and for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life, appears by the record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of the director of the department of corrections * * * be deducted from the term or terms of sentence of that prisoner the same number of days that there are years in the term of his or her sentence; provided that when the sentence is for a longer term than ten (10) years, only ten (10) days shall be deducted for one month’s good behavior * * *.
[[Image here]]
“(e) For each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life who has faithfully engaged in institutional industries there shall, with the consent of the director * * * be deducted from the term or terms of the prisoner an additional two (2) days a month. These two (2) days a month shall be deducted regardless of the length of the sentence of the prisoner.”
The first clause of § 42-56-24(a) clearly limits that provision’s applicability to situations where a defendant is “sentenced to imprisonment for six (6) months or more” but not “sentenced to imprisonment for life.” (Emphases added.) That section then goes on to state that a defendant’s good-time credits “shall * * * be deducted from the term or terms of sentence.” Id. (emphasis added). “The same words used twice in the same act are presumed to have the same meaning.” 2A Sutherland Statutory Construction § 46:6 at 249 (7th ed.2007). The natural conclusion is that the “sentence” from which the Legislature intended the credits to be deducted is one of imprisonment.[9] Thus, the plain language of § 42-56-24 suggests that the only form of mitigation contemplated in that provision is a reduction of the amount of time that a defendant must spend incarcerated.
Rose acknowledges that his good-time credits reduced the amount of time that he spent in prison but argues that those credits entitle him to further mitigation of his sentence. In particular, he argues that, because his good-time credits resulted in his early release from the ACI, his twelve-year period of probation should have commenced and, consequently, ended that much sooner. In making this argument, he relies on the sentencing justice’s pronouncement that his twelve-year term of probation would commence “upon release” from the ACI.
*909 A Superior Court sentencing justice has the authority under G.L.1956 § 12-19-8 to mitigate a defendant’s sentence by “suspending] the execution of the sentence, in whole or in part.” When the sentencing justice orders that the execution of a defendant’s sentence be suspended, “[t]he suspension shall place the defendant on probation[.]” Id. The sentencing justice may determine the length of time and the conditions of that probationary period. Although we have previously interpreted § 12-19-8 as affording a trial justice the discretion to determine when a prisoner’s term of probation will commence, see Gonsalves v. Howard, 113 R.I. 544, 546, 324 A.2d 338, 340 (1974), we have also held that a sentencing justice’s pronouncement about the commencement of probation will not be given effect to the extent that it conflicts with another statutory provision. See State v. Dantzler, 690 A.2d 338, 339, 342 (R.I.1997) (citing Gonsalves, 113 R.I. at 547, 324 A.2d at 340-41, but refusing to give effect to trial justice’s statement that probation would commence upon release when to do so would conflict with § 12-19-9).
In the instant case, if the sentencing justice’s statement about the commencement of probation is given literal effect, Rose will complete his entire sentence in less than twenty years. At the time Rose was sentenced in 1994, the Legislature had mandated a twenty-year minimum sentence for those convicted of first-degree child molestation. See § 11-37-8.2, as enacted by P.L.1984, ch. 59, § 2. For sexual offenses, our Legislature has prescribed specific penalties that take into consideration the age of the victims. See State v. Yanez, 716 A.2d 759, 764 (R.I.1998). The minimum sentence provided in § 11-37-8.2 for first-degree child molestation reflects the tender age of the victim. See Yanez, 716 A.2d at 764. Legislatively imposed minima and maxima circumscribe a trial justice’s sentencing authority. See State v. Holmes, 108 R.I. 579, 584, 277 A.2d 914, 917 (1971). In accordance with this principle, we have previously refused to construe a sentencing provision, even an ameliorative one, in a manner that would “authoriz[e] sentencing justices to impose a sentence less than that for which the Legislature ha[s] otherwise specifically provided.” Id. Thus, we conclude that there is no authority which would allow the sentencing justice’s words to effectively reduce the total length of Rose’s sentence below the mandatory minimum.[10]
The rule of lenity does not compel a different conclusion. Rose suggested at oral argument that, to the extent there is any inconsistency between the statutory minimum sentence and the provisions for good time, the rule of lenity requires that the inconsistency be resolved in his favor. The rule of lenity applies when interpreting statutes that define “the substantive ambit of criminal prohibitions” and impose *910 penalties. Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The award of good-time credits involves “neither the substantive ambit of a criminal prohibition nor the penalty it impose[s].” Sash v. Zenk, 428 F.3d 132, 134 (2d Cir.2005). As then-Court of Appeals Judge, now United States Supreme Court Justice Sotomayor explained when writing for the Second Circuit, “[t]he fact that the * * * administrative reward for compliance with prison regulations is a sentence reduction does not make that administrative reward part of the process of criminal sentencing.” Id. We find this reasoning persuasive and agree with those courts which have declined to apply the rule of lenity to statutes awarding good time. See, e.g., Wright v. Federal Bureau of Prisons, 451 F.3d 1231, 1236 (10th Cir.2006); Zenk, 428 F.3d at 134; Perez-Olivo v. Chavez, 394 F.3d 45, 53 (1st Cir.2005) (Bureau of Prisons’ “calculation of reductions in a sentence for [good time], * * * is not, strictly speaking, a ‘criminal’ statute, and thus we do not believe the rule of lenity would apply.”).
In contrast, the mandatory minimum contained in § 11-37-8.2 clearly imposes a criminal penalty. We are nonetheless equally unable to apply the rule of lenity to this provision. Resort to the rule of lenity is only appropriate when the meaning of a criminal statute is ambiguous and therefore inappropriate “‘when the legislative intent is clear.’ ” Such v. State, 950 A.2d 1150, 1158 (R.I.2008). In § 11-37-8.2, our Legislature clearly and directly stated that the penalty for first-degree child molestation was to be no less than twenty years.
The dissent makes a similar argument that, in absence of a clear legislative prohibition, § 42-56-24 should be construed in Rose’s favor. While there may be some intuitive appeal to the idea that silence should be interpreted in applicant’s favor, we respectfully conclude that this argument overlooks the fact that a sentence may be composed of several parts. The dissent reads § 42-56-24, which is silent on probation,[11] as affording the DOC the authority to reduce the overall length of the split sentence imposed by the trial justice. Here, the trial justice sentenced Rose to a total of twenty years. While the Legislature in § 42-56-24 clearly gave the DOC the discretion to mitigate that sentence by providing for Rose’s early release from the ACI, it did not endow the DOC *911 with the power to modify the overall length of a judicially imposed sentence in the manner that the dissent suggests. Indeed, we doubt whether the General Assembly could lawfully direct the DOC to make such a reduction. While the executive branch may execute a sentence, the power to reduce the length of a sentence imposed by a justice of the Superior Court is a judicial one. See Rule 35 of the Superior Court Rules of Criminal Procedure. As a judicial power, it may not be exercised by the Legislature, either directly or indirectly. See Taylor v. Place, 4 R.I. 324 (1856).
Lastly, we remain unconvinced by Rose’s suggestion that the refusal to reduce his sentence below twenty years unlawfully converts his good-time credits into “additional” probation. We cannot accept Rose’s characterization of his release on good time as the imposition of an added burden. We have consistently explained that “the terms and conditions inherent in the * * * privilege of probation * * * come into existence at the very moment that a sentence that includes probation is imposed,” even before the formal commencement of probation. Dantzler, 690 A.2d at 339 (citing State v. Jacques, 554 A.2d 193, 195 (R.I.1989)). Those implied conditions to keep the peace and be of good behavior therefore apply while a defendant is in the ACI, such that his or her probation may be revoked for a violation of those conditions which occurs before the start of his formal probationary period. See id. at 342. Accordingly, even without any good-time credits, Rose would have been obligated to keep the peace and be of good behavior, or else risk being violated, for the full eight years preceding the formal commencement of his probation. Through legislative grace, Rose spent one and one-half of those eight years on the street rather than in the ACI. The fact that he was still obligated to abide by the same conditions to keep the peace and be of good behavior for that period of time presents no “additional” hardship. Regardless of whether the strings attached are implied or formal, we view the fact that Rose was allowed to spend those eighteen months outside the walls of the ACI as an act of leniency and not as the imposition of an additional burden.
B
Credit for Time Served Under § 12-19-2(a)
We next turn our attention to Rose’s contention that the trial justice erred in failing to advance the end date of his probationary term by an amount of time equal to that which he spent confined while awaiting disposition of his case. Rose argues that he was entitled to such an adjustment under the so-called “dead time” provisions of §. 12-19-2(a) which state:
“(a) Whenever it is provided that any offense shall be punished by * * * imprisonment, the court imposing punishment may, in its discretion, select the * * * term within the limits prescribed by law; provided if the punishment to be imposed is imprisonment, the sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * *
The phrase “dead time” refers to the period of time spent in jail that ordinarily cannot be used to determine a prisoner’s eligibility for parole. State v. Winston, 105 R.I. 447, 454, 252 A.2d 354, 358 (1969). As we have previously explained, § 12-19-2 represents the Legislature’s “benevolent effort to assist the person who, because of an inability to make bail, [has] been cast into a sort of limbo” where his or her “time spent awaiting trial or sentence [can]not *912 be credited towards any future parole.” State v. Ilacqua, 765 A.2d 822, 824 (R.I.2001) (quoting State v. Skirvin, 113 R.I. 443, 446, 446 n. 1, 322 A.2d 297, 299-300, 300 n. 1 (1974)). The credit provided for in § 12-19-2(a) thereby ensures that “all persons sentenced to identical terms w[ill], apart from differentials arising out of allowances for ‘good time’ and/or parole, be deprived of their liberty for identical periods of time.” Holmes, 108 R.I. at 584, 277 A.2d at 917.
Consonant with these legislative purposes, we have interpreted § 12-19-2(a) as entitling a defendant to credit towards a term of imprisonment but not to any adjustment of a probationary sentence. See State v. Bergevine, 883 A.2d 1158, 1159 n. 1 (R.I.2005) (mem.). In Bergevine, we specifically addressed whether § 12-19-2(a) authorizes a trial justice to advance the calendar dates of a defendant’s sentence to account for the time that the defendant spent in pretrial confinement. On April 25, 1994, Bergevine received a ten-year suspended sentence with ten years probation. See Bergevine, 883 A.2d at 1158. Less than six months after the imposition of his sentence, he violated the terms of his probation and was ordered to serve five of the ten years. See id. He received credit, however, for approximately nine months that he had spent in community confinement while awaiting trial. See id. On January 7, 2004, Bergevine once again violated his probation. See id. He argued that he was no longer on probation at the time of the second alleged violation because the credit he received for time served made his ten-year sentence, including his probation, retroactive. See id. We decisively rejected Bergevine’s argument, reasoning that § 12-19-2(a) did not make his probationary sentence retroactive but “merely reduced the amount of time that the defendant had remaining to serve on the five-year term of incarceration * * *.” Bergevine, 883 A.2d at 1159.
In acknowledgement of Bergevine’s holding, Rose refrains from requesting that we “retro-date” his sentence. He argues nonetheless that his probationary period should have commenced and ended fifteen months earlier because his credit for time served caused him to be released from prison that much sooner. While Rose may intellectualize the situation differently than the defendant in Bergevine, the practical result that he seeks is the same. If we accept Rose’s argument, his entire twenty-year sentence would effectively slide backwards such that both his term of incarceration and his period of probation would begin and end fifteen months earlier. We cannot countenance a result that we have previously forbidden simply because it is painted in different terms. Rose acknowledges that, in accordance with § 12-19-2(a), his term of imprisonment was shortened by the amount of time that he spent awaiting disposition of his case. We do not believe that § 12-19-2(a) entitles him to any further reduction of his sentence.
Accordingly, we reach the same conclusion as the hearing justice that neither Rose’s credits for good time nor his credits for time served entitled him to an acceleration of the end date of his probationary term. Although our conclusion rests on reasons that differ from those relied upon by the hearing justice, we may affirm a trial justice’s decision so long as “there are other valid reasons to support the order or judgment appealed from.” DeSimone Electric, Inc. v. CMG, Inc., 901 A.2d 613, 620-21 (R.I.2006) (quoting Levine v. Bess Eaton Donut Flour Co., 705 A.2d 980, 984 (R.I.1998)). We therefore hold that the hearing justice correctly denied Rose’s application for postconviction relief.
*913 Before concluding our discussion, we acknowledge that we were presented at oral argument with more than one hypothetical scenario concerning the possible effects of applying credits to sentences other than the one that Rose received. In a sophisticated sentencing scheme, such as ours, there are many permutations of possible sentences. We confine ourselves, however, to our proper role of resolving only the questions presented to us in the instant appeal and leave any attempt to make a broader pronouncement to the Legislature.
IY
Conclusion
For the foregoing reasons, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

.Since there is no appeal from the Superior Court’s denial of a petition for a writ of habe-as corpus, we will confine our review to the denial of Rose’s application for postconviction relief. See DiLibero v. State, 996 A.2d 599, 601 (R.I.2010) (citing G.L.1956 § 10-9-22). We note, however, that in this case, the distinction is immaterial. Rose sought the same relief in both his application and his petition, and the hearing justice denied both on the same grounds.

. In 2006, the Legislature increased the mandatory minimum to twenty-five years. See P.L.2006, ch. 206, § 3.

. The judgment of conviction gives the effective date of Rose's sentence as December 23, 1993, instead of December 23, 1992. This appears to be an error.

. General Laws 1956 § 10 — 9.1—1(a) provides, in relevant part:
"Any person who has been convicted of, or sentenced for, a crime * * * and who claims:
[[Image here]]
"(5) That his or her sentence has expired, his or her probation, parole, or conditional release unlawfully revoked, or he or she is otherwise unlawfully held in custody or other restraint;
[[Image here]]
"may institute, without paying a filing fee, a proceeding under this chapter to secure relief.”

. We consider a premature notice of appeal timely so long as final judgment is thereafter entered. Curtis v. State, 996 A.2d 601, 603 n. 3 (R.I.2010) (citing State v. Espinal, 943 A.2d 1052, 1057 n. 4 (R.I.2008)).

. Rose received credits for both good conduct and participation in institutional industries. For the sake of simplicity, we collectively refer to both categories of credits as "good-time credits.”

. The exact effect of good-time credits on a prisoner’s release, i.e. how early he or she is released and whether that release is on parole, varies not only from one prisoner to another but also from one jurisdiction to another, depending on the sentencing scheme each jurisdiction employs. See James B. Jacobs, Sentencing by Prison Personnel: Good Time, 30 UCLA L.Rev. 217, 222-24 (1982); Neil P. Cohen, 1 The Law of Probation and Parole, § 4:20 (2d. ed.1999). The minimum that we are concerned with in this case, however, is not the minimum period of incarceration. • Rather the issue in this case is what comes after Rose’s release. Accordingly, we assume for the purposes of this appeal that Rose's release date was correctly calculated.

. A prisoner’s good behavior and institutional industries credits are to be determined in accordance with the statutory provisions in effect at the time of sentencing. Barber v. Vose, 682 A.2d 908, 913 n. 3 (R.I.1996).

. In 2012, the Legislature amended G.L.1956 § 42-56-24(a) to provide that prisoners convicted of certain enumerated offenses "shall not be eligible to earn time off their term or terms of incarceration for good behavior.” See P.L.2012, ch. 150, § 1 (emphasis added). This recent amendment suggests that our interpretation is consistent with the 2012 General Assembly's understanding of § 42-56-24(a).

. Rose suggests that, because G.L.1956 § 12-19-8 allows for the suspension of his sentence, the twenty-year minimum provided for in G.L.1956 § 11-37-8.2 represents only his "potential” sentence of incarceration. The Legislature has expressly indicated when the sentence for a particular offense may not be suspended. See, e.g., G.L.1956 § 12-29-5(c)(2); G.L.1956 § 31-40-8(a). The Legislature has not imposed any such restriction on a trial justice’s authority to suspend a sentence for first-degree child molestation. We therefore agree that § 11-37-8.2. does not require that Rose spend twenty years incarcerated at the ACI since § 12-19-8 clearly authorized the sentencing justice to suspend all or part of that twenty-year sentence. In this case, however, the combined length of time that Rose will spend incarcerated and on probation will fall below twenty years if the sentencing justice’s words "upon release” are allowed to control. For this result, we find no authority.

. Our Legislature’s silence about tire commencement of probation in a split sentence may be contrasted with the pronouncements of the legislatures in several of our sister states. See, e.g., Conn. Gen.Stat. Ann. § 53a-31(a) (West 2012) (specifying that when probation "is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court, it commences on the day the defendant is released from such imprisonment”); Fla. Stat. Ann. § 948.012(1) (West 2010) (when the court imposes a "split sentence” of incarceration followed by probation, ”[t]he period of probation or community control shall commence immediately upon the release of the defendant from incarceration, whether by parole or gain-time allowances”); Md.Code Ann., Crim. Proc. § 6 — 225(b)(2) (LexisNexis 2008) ("If a sentence of imprisonment is imposed and a part of it is suspended with the defendant placed on probation, the court may impose as a condition of probation that the probation begin on the day the defendant is released from imprisonment.”). Similarly, in the federal system, which has a system of "supervised release,” Congress has directed that "the terms of supervised release commence on the day the person is released from imprisonment * * 18 U.S.C. § 3624(e). At least one federal court has relied on this language to hold that good-time credits which accelerate a federal prisoner's release from incarceration also accelerate the end date of his period of supervised release. See United States v. Lynch, 114 F.3d 61 (5th Cir.1997). Our Legislature has issued no such directive.