May 3, 2017

**Supreme Court**

No. 2013-203-M.P.
(P1/82-500A)

State                    :

v.                 :

Anthony Parrillo.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                           :

v.                              :

Anthony Parrillo.               :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  This Court issued a writ of certiorari to review a Superior Court order denying the state's request to adjudge Anthony Parrillo a probation violator.  The hearing justice's decision to deny the state's request was based upon his finding that Parrillo was no longer on probation at the time that he allegedly committed the offense of felony assault.  For the reasons set forth in this opinion, we vacate the order of the Superior Court and remand the case for further proceedings.

**I**

**Facts and Procedural History**

The pertinent facts in this case are not in dispute.  In March 1982, Parrillo was charged with two separate counts of murder.  Later that year, a Superior Court jury found him guilty of murder in the first degree on count 1 of the indictment and guilty of murder in the second degree on count 2 of the indictment.  Parrillo appealed to this Court, and in 1984 we vacated the judgment of conviction. State v. Parillo, 480 A.2d 1349, 1359 (R.I.

- 1 -

1984).[1]  The case was remanded to the Superior Court where, on January 21, 1986,

Parrillo pled guilty to two counts of second-degree murder.  Significantly, per the

judgment of conviction and commitment, he was sentenced to thirty years, the first

twenty years to serve with "the remaining 10 years * * * suspended, probation for 10

years, said probation to commence upon [Parrillo's] release from the [Adult Correctional

Institutions (ACI)], each count concurrent."[2]

On December 22, 1993, after receiving what appear to be credits for time served

pursuant to G.L. 1956 § 12-19-2[3] and for good behavior pursuant to G.L. 1956 § 42-56-

24,[4] Parrillo was released from the ACI on parole.  According to an affidavit by Parrillo,

---

[1] Although the 1984 case caption was spelled <u>State v. Parillo</u>, Parrillo appears to be the correct spelling and is used herein.

[2] A transcript of the sentencing hearing was not before the Superior Court at the probation violation hearing, nor is one before this Court.

[3] General Laws 1956 § 12-19-2(a) provides, in relevant part, that "if the punishment to be imposed is imprisonment, the sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * * *."

[4] General Laws 1956 § 42-56-24, as amended by P.L. 1976, ch. 290, § 1, in effect in 1986 provided:

> "The assistant director of adult services shall keep a record of the conduct of each prisoner, and for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life appears by such record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of the director of the department of corrections or his designee, upon recommendation to him [or her] by the assistant director of adult services be deducted from the term or terms of sentence of such prisoner the same number of days that there are years in the said term of his [or her] sentence; provided that when the sentence is for a longer term than ten (10) years,  only ten (10) days shall be deducted for one (1) month's good behavior; and provided, further, that in the case of sentences of at least six (6) months and less than

on or about October 25, 1999, he was advised by his parole officer that his parole was terminated and that his ten-year term of probation began as of that date. Ten years passed without incident, and the Department of Corrections (DOC) informed Parrillo, in writing, that his "file ha[d] expired on [October 24, 2009,]" and that "[a]ccording to available records as of [that] date, [his] probation ha[d] been terminated * * *." This information was conveyed in a letter, dated December 14, 2009, under the letterhead of the "Adult Probation and Parole" unit of the DOC and signed by Donna Broccoli, "[a]dministrative [o]fficer" (2009 letter). Parrillo thereafter had no contact with the probation department.

On December 17, 2011, Parrillo was arrested as a result of a physical altercation that occurred at Club 295, a nightclub located on Atwells Avenue in Providence (2011

one (1) year, one (1) day per month shall be so deducted; and provided, further, that for purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence; and provided, further, that for every day a prisoner shall be shut up or otherwise disciplined for bad conduct, as determined by the assistant director of adult services subject to the authority of the director, there shall be deducted one (1) day from the time he [or she] shall have gained for good conduct; and provided, further, that the assistant director of adult services subject to the authority of the director, shall have the power to restore such lost good conduct time in whole or in part upon a showing by the prisoner of subsequent good behavior and disposition to reform; and provided, further, for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life who has faithfully engaged in institutional industries there shall, with the consent of the director, upon the recommendations to him [or her] of the assistant director of adult services be deducted from the term or terms of sentence of such prisoner an additional two (2) days a month. Said two (2) days a month shall be deducted regardless of the length of the sentence of said prisoner."

incident). He was later charged with two counts of felony assault, conspiracy to commit felony assault, and simple assault as a result of the 2011 incident.[5] In addition, on January 9, 2012, the state filed a probation violation report pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure.[6] The state maintained that Parrillo had failed to "keep the peace and be of good behavior" and that, as a consequence, he should be adjudged a violator.

Parrillo objected to the state's Rule 32(f) violation report and filed a request to be discharged from probation, to which the state objected. He sought a dismissal of the Rule 32(f) violation report on the grounds that "he was no longer on probation at the time of either the alleged conduct or the filing of the violation notice, but instead that his probation expired some time before that." Parrillo attested that he "believed that [his] probation should have ended at the earliest on December 20, 2003, but in any event [he]

---

[5] After a jury-waived trial before a Superior Court justice, Parrillo was convicted of aiding and abetting one felony assault and of misdemeanor assault. The other felony assault and the conspiracy counts were dismissed. A notice of appeal was filed on April 19, 2016.

[6] At the time, Rule 32(f) of the Superior Court Rules of Criminal Procedure provided that:

> "The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

In 2016, Rule 32(f) was amended to include that "[n]o revocation shall occur unless the [s]tate establishes by a fair preponderance of the evidence that the defendant breached a condition of his/her probation or deferred sentence or failed to keep the peace or remain on good behavior."

was not on probation after October 24, 2009," and that he "conducted [him]self at all times as though [he] was not on probation." He claimed that he had relied on the language used by the sentencing justice, i.e., that his ten-year probationary term would "commence upon [his] release from the ACI," in addition to the DOC letter that informed him that his probation had terminated on October 24, 2009—ten years after his release from parole. He also argued, seemingly in the alternative, that the state should be barred from seeking to revoke his probation because to hold otherwise would constitute a violation of his due-process rights.

A violation hearing was held on November 2, 2012, at which time Parrillo argued that he was not "subject to being violated because his probation ha[d] already terminated" in 2009. He maintained that it was "inconceivable" that the state could inform Parrillo that his probation had ended, and then, years later, attempt to adjudge him a probation violator. In response, the state maintained its position that Parrillo was in fact on probation at the time of the 2011 incident. Specifically, the state claimed that Parrillo's thirty-year sentence in 1986 meant that he would "finish serving the full term of his sentence on January 22, 2016."

The hearing justice disagreed with the state and quashed the Rule 32(f) violation report. The hearing justice rejected Parrillo's argument that the doctrine of equitable estoppel barred the state from seeking to adjudge him a violator, reasoning that "the probation officer had no authority to modify [the sentence]," and that it was "absurd to even attempt to apply the detrimental reliance [analysis] in the context of the facts of this case." However, the hearing justice held that the language of § 12-19-8 was clear in that it granted the sentencing justice the authority to set the period of probation. Therefore, he

concluded that the sentencing justice's specification that probation would "commence upon [Parrillo's] release from the ACI" should be given effect.[7]  An order entered denying the state's request that Parrillo be adjudged a probation violator.

The state subsequently filed a motion to reconsider and, on April 5, 2013, its motion was heard.[8]  The hearing justice explained that his decision to deny and dismiss the Rule 32(f) violation report was based on what he felt was "the only evidence of the intent of the sentencing judge"—the clear language of the judgment of conviction that articulated that the probationary term would "commence upon [Parrillo's] release from the ACI."  The hearing justice further explained that "[t]he [sentencing] judge could have sentenced [Parrillo] to 30 years, 20 to serve, with the balance of the term suspended and [Parrillo] placed on probation for that period of time[,] [but] [h]e did not."  Therefore, the hearing justice denied the state's motion to reconsider.  The state thereafter filed a petition for a writ of certiorari, which this Court granted on May 27, 2014.

## II

### Standard of Review

"This Court's review 'on writ of certiorari is limited to examining the record to determine if an error of law has been committed.'" Huntley v. State, 63 A.3d 526, 530 (R.I. 2013) (quoting State v. Shepard, 33 A.3d 158, 163 (R.I. 2011)).  "Questions of law * * * are not binding upon the [C]ourt and may be reviewed to determine what the law is and its applicability to the facts." Id. at 530-31 (quoting Shepard, 33 A.3d at 163).  "We

---

[7] The hearing justice did not specify if, in his view, the probation began upon Parrillo's release from the ACI or upon his completion of parole, but the hearing justice did find that regardless of the operative date, at the time of the 2011 incident, Parrillo was not on probation.
[8] We agree with the hearing justice that our Superior Court Rules of Criminal Procedure provide no avenue for such a motion.  Nevertheless, the hearing justice entertained the motion.

reverse only when we find pursuant to the petition that the [hearing justice] committed an error of law." Id. (quoting Shepard, 33 A.3d at 163).  On certiorari, "[w]e do not weigh the evidence." Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1177 (R.I. 2008).  "If legally competent evidence exists to support th[e] determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal." Id. (quoting Cullen v. Town Council of Lincoln, 893 A.2d 239, 244 (R.I. 2006)).

### III

### Discussion

We first address the question of whether, as a matter of law, Parrillo was on probation at the time of the 2011 incident.  To do so, we must delve into the governing statutory provisions and our jurisprudence interpreting such provisions, most recently pronounced in Rose v. State, 92 A.3d 903 (R.I. 2014).  If Parrillo was indeed on probation at that time, then we must determine if the hearing justice committed an error of law in rejecting Parrillo's equitable estoppel defense against the state.

### A

### Parrillo's Thirty-Year Sentence

The determination of whether Parrillo was on probation at the time of the 2011 incident turns on the application and interplay of several statutory provisions, the first of which is § 12-19-8.  Section 12-19-8(a) provides, in relevant part, that the sentencing court "may impose a sentence and suspend the execution of the sentence, in whole or in part, or place the defendant on probation without the imposition of a suspended sentence[,]" and that such "suspension shall place the defendant on probation for the time

and on any terms and conditions that the court may fix." We have interpreted § 12-19-8 as granting a sentencing justice a wide range of discretion when imposing a sentence so long as that sentence does not conflict with any other statutory provision. See Rose, 92 A.3d at 909. Next at play are §§ 42-56-24 and 12-19-2(a). Section 42-56-24 authorizes the DOC to mitigate a defendant's sentence by rewarding a prisoner's good behavior and industriousness with credits towards his or her sentence (herein, good-time credits); meanwhile, § 12-19-2(a) requires that "if the punishment to be imposed [at sentencing] is imprisonment, the sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing" (herein, time-served credit). This Court's recent decision in Rose, 92 A.3d at 907-13, dealt with the interplay of these statutory provisions in light of a mandatory-minimum sentence.

In Rose, 92 A.3d at 907, this Court was tasked with deciding "[w]hat effect, if any, [did the defendant's] credits for (1) good time and (2) time served have on the total length of his sentence[.]" Alexander Rose (Rose) had pled nolo contendere to one count of first-degree child molestation and was sentenced to twenty years—the mandatory minimum at that time pursuant to G.L. 1956 § 11-37-8.2.[9] Rose, 92 A.3d at 905. At the sentencing hearing, the Superior Court justice stated that: "the defendant [was] sentenced to 20 years at the ACI, eight years to serve, credit retroactive to December 23, 1992, the balance, 12 years, suspended, and upon release the defendant is placed on 12 years probation." Id. Rose was subsequently released from the ACI on parole on December 17, 1997, as a result of receiving time-served and good-behavior credits. Id. at 905-06. In July 1999, Rose completed his parole without incident and, in 2010, he filed a petition for

---

[9] General Laws 1956 § 11-37-8.2 has since then been amended to a twenty-five-year mandatory minimum sentence. See P.L. 2006, ch. 206, § 3.

a writ of habeas corpus and an application for post-conviction relief—specifically requesting to be discharged from probation. Id. at 906. Rose asserted that his probationary period ended in July 2011—twelve years after his successful completion of parole.[10] Rose relied on the sentencing justice's assertion at sentencing that his twelve-year probationary term would commence "upon release" from the ACI. Id. at 908.

In our opinion affirming the dismissal of Rose's petition, this Court analyzed the language of § 42-56-24's good-time credits. Rose, 92 A.3d at 907-11. We held that the plain language of the good-time-credit statute suggested that the "only form of mitigation contemplated in that provision [was] a reduction of the amount of time that a defendant must spend incarcerated." Id. at 908. Thus, any mitigation of Rose's sentence under § 42-56-24 did not change or reduce his twenty-year sentence, but instead reduced the time that he would be confined at the ACI. See Rose, 92 A.3d at 908. In response to Rose's argument that he relied on the statements made by the sentencing justice that he would be on probation for twelve years "upon release from the ACI," we acknowledged that:

> "Although we have previously interpreted § 12-19-8 as affording a trial justice the discretion to determine when a prisoner's term of probation will commence, * * * we have also held that a sentencing justice's pronouncement about the commencement of probation will not be given effect to the extent that it conflicts with another statutory provision.
> "* * * [W]e conclude[d] that there [was] no authority which would allow the sentencing justice's words to effectively reduce the total length of Rose's sentence below the mandatory minimum." Rose, 92 A.3d at 908, 909.

In analyzing time-served credits pursuant to § 12-19-2(a), we held that although Rose "intellectualized [his] situation differently than the defendant" in State v.

---

[10] In his filings, Rose had also argued that his probation ended on December 17, 2009—twelve years after the date of his release from the ACI on parole. Rose v. State, 92 A.3d 903, 906 (R.I. 2014). At oral argument, he abandoned this position. Id. at 907.

Bergevine, 883 A.2d 1158 (R.I. 2005) (mem.), in essence Rose sought the same outcome that this Court rejected in Bergevine, i.e.,—that Rose's probation start and end date be dated back due to the fifteen-month credit that he received for time served. Rose, 92 A.3d at 912. In Bergevine, we decisively rejected the defendant's argument that he was not on probation at the time of an alleged probation violation because the approximate nine-month time-served credit made his ten-year sentence, including his probation, retroactive. Bergevine, 883 A.2d at 1158-59. Accordingly, we concluded in Rose, as had the hearing justice, that "neither Rose's credits for good time nor his credits for time served entitled him to an acceleration of the end date of his probationary term." Rose, 92 A.3d at 912.

In the case under review, the state argues that this Court should apply Rose and, in view of its holding, reverse the hearing justice's decision and his finding that Parrillo was not on probation at the time of the 2011 incident. The state also argues that any attempt to distinguish Rose from this case lacks merit. In response, and in support of Parrillo's assertion that he was not on probation at the time of the 2011 incident, Parrillo raises three key arguments. First, he argues that Rose is inapplicable to his case, as Rose relied heavily on State v. Jacques, 554 A.2d 193 (R.I. 1989),[11] and State v. Dantzler, 690 A.2d 338 (R.I. 1997),[12] two cases that were decided after Parrillo's 1986 sentencing. Second, Parrillo argues that even if Rose is applicable, it is distinguishable from his case, as Rose dealt with a mandatory minimum sentence and whether the words of a sentencing justice, together with both the defendant's good-time and time-served credits, could in

---

[11] In State v. Jacques, 554 A.2d 193, 196 (R.I. 1989), we first announced that a probationary period began at imposition of a sentence, even if that meant at the commencement of incarceration.

[12] In State v. Dantzler, 690 A.2d 338, 341-42 (R.I. 1997), we held that the trial court could revoke a probationary term on the basis of criminal acts committed after imposition of sentence but before the actual probationary portion of sentence commenced.

effect lower the defendant's sentence to less than the statutory minimum. However, here, Parrillo argues that, unlike Rose, "there was no possibility that the combined length of [the] time [he] will spend incarcerated and on probation will fall below [the minimum mandatory term] if the sentencing justice's words 'upon release' are allowed to control." Lastly, Parrillo argues that principles of estoppel apply as a matter of due process, barring the state from seeking to adjudge him a probation violator.

Rose is central to our analysis of the state's petition and to our application of good-time credits, time-served credits, and § 12-19-8 to this case. Here, Parrillo, like Rose, claims that the sentencing justice's pronouncement that his probationary term was to begin "upon [his] release from the ACI" is binding pursuant to the authority granted to a sentencing justice, implying that the clock on his probationary term should have started ticking when he either was released on parole or had successfully completed parole. We reject, however, Parrillo's contention that Rose does not apply because it was predicated on two decisions decided after he was sentenced. It is well established that a judicial interpretation of a statute "relates back" to the date the statute was enacted and, unlike legislative action, does not implicate ex post facto considerations. State v. Barber, 767 A.2d 78, 79-80 (R.I. 2001) (rejecting the defendant's contention that Dantzler and Jacques were inapplicable to his case because they were decided after he was sentenced).

Moreover, this Court appreciates that here, unlike in Rose, if Parrillo's probation were to "commence upon [his] release from the ACI," it would not reduce his sentence below the mandatory minimum. See Rose, 92 A.3d at 909. The reduced sentence, which would range between seventeen and twenty-three years, depending on the operative

date,[13] would be well above the ten-year mandatory-minimum for second-degree murder, pursuant to G.L. 1956 § 11-23-2. It is our opinion, however, that this distinction does not require us to stray away from our clearly articulated interpretation of the good-time and time-served credit statutes enunciated in Rose, and the effect that these credits have on the length of a defendant's overall sentence, nor does this distinction warrant a different outcome. Rose, 92 A.3d at 912, was clear—neither Parrillo's "credits for good time nor his credits for time served entitle[] him to an acceleration of the end date of his probationary term[,]" because the DOC does not have the "power to modify the overall length of a judicially imposed sentence * * *." Id. at 911.[14] The power to reduce a sentence, either directly or indirectly, is reserved to the judiciary.[15] Id. Here, the sentencing justice sentenced Parrillo to thirty years. Although § 12-19-8 permitted the sentencing justice to suspend a portion of the sentence, as he chose to do, any suspended or probationary period did not reduce the sentence from what he specifically articulated was thirty years.

---

[13] If his probation were to begin upon his physical release from the ACI in 1993, his sentence would end in 2003, seventeen years after it was imposed in 1986. If his probation were to begin upon his release from parole in 1999, his sentence would end in 2009, twenty-three years after it was imposed.

[14] We are of the opinion that the dissent's conclusion that the General Assembly has, by statute, modified Parrillo's sentence is incorrect and not supported by our well-settled constitutional jurisprudence. The sentence imposed in this case is a final judgment of conviction by the Superior Court. A final judgment may be reopened or amended only according to law and in the exercise of judicial power. See Taylor v. Place, 4 R.I. 324, 363 (1856) ("the exercise of judicial power [is] prohibited to the general assembly" pursuant to the Constitution of Rhode Island).

[15] A recent amendment to Rule 35 of the Superior Court Rules of Criminal Procedure now provides a vehicle to amend a sentence. Rule 35(c) provides that: "At any time after a defendant has served at least three (3) years of a term of probation in the community, the probation unit of the department of corrections, either at a defendant's request or administratively, may review the defendant's case history and recommend amending the defendant's sentence to terminate the defendant's probation."

Accordingly, because Parrillo was sentenced on January 21, 1986, to a thirty-year term, and because the effect of his good-time or time-served credits reduced his period of incarceration, but did not reduce the overall length of his sentence, his sentence officially ended on January 21, 2016—thirty years later. Consequently, the hearing justice committed an error of law in finding that Parrillo was not on probation at the time of the 2011 incident. Because we hold that Parrillo was on probation and subject to being adjudged a violator at the time of the 2011 incident, we must now address whether the hearing justice committed an error of law when he held that the doctrine of equitable estoppel did not bar the state from seeking to adjudge Parrillo a probation violator.

**B**

**Equitable Estoppel**

Parrillo argues that the state should be estopped from seeking to adjudge him a probation violator by invoking the doctrine of equitable estoppel because he relied, to his detriment, on the representation made by the DOC in the form of the 2009 letter informing him that he had completed his probationary term. Parrillo attested that he "conducted [himself] at all times as though [he] was not on probation" in reliance to the representation made. In response, the state insists that Parrillo has failed to meet the necessary elements of the equitable estoppel doctrine.

Necessary "to the successful invocation of the doctrine of equitable estoppel is the establishment of: '[F]irst, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his

injury.'" Faella v. Chiodo, 111 A.3d 351, 357 (R.I. 2015) (quoting Cigarrilha v. City of Providence, 64 A.3d 1208, 1213 (R.I. 2013)). Moreover, the applicability of equitable estoppel is dependent upon "[t]he facts and circumstances of each case." Lerner v. Gill, 463 A.2d 1352, 1362 (R.I. 1983).

"It must be emphasized that '[e]quitable estoppel is extraordinary relief, which will not be applied unless the equities clearly [are] balanced in favor of the part[y] seeking relief.'" Faella, 111 A.3d at 357 (quoting Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 67 (R.I. 2005)). "Indeed, 'equitable estoppel is not a favored doctrine * * * [and should be] applied carefully and sparingly and only from necessity. Each of the elements of estoppel must be proved with the requisite degree of certainty; no element may be left to surmise, inference, or speculation.'" Id. (quoting 28 Am. Jur. 2d Estoppel and Waiver § 166 at 633 (2011)). "[T]he party seeking relief under the doctrine of equitable estoppel bears the burden of proving the necessary elements." Id. at 358. "[W]hether a party 'has [successfully] met [his or her] burden in a particular case is an issue of fact' to be resolved by the factfinder." Id.

This Court has acknowledged that, "[a]s a general rule, courts are reluctant to invoke estoppel against the government on the basis of an action of one of its officers." Lerner, 463 A.2d at 1362. However, we have also

> "held that in proper circumstances a public agency may be estopped from denying representations made by its agents causing an individual to act to his detriment in reliance upon those statements. The facts and circumstances of each case must be closely scrutinized to determine whether justice requires the imposition of estoppel." Id.[16]

---

[16] See State v. Bonsante, 112 R.I. 547, 548, 313 A.2d 134, 135 (1973) ("we should hold that the state's failure to award [the defendant] a speedy trial acts as a bar of estoppel to any further prosecution for the same or another closely related offense").

It is our opinion that the facts of this case do not present the "proper circumstance" for the doctrine of equitable estoppel to apply against the state, and that therefore the hearing justice's finding that Parrillo's equitable estoppel argument was unpersuasive was not an error of law for several reasons. First, although a DOC administrative officer sent the 2009 letter to inform Parrillo that his probation had terminated, this employee did not have the authority to decrease a judicially imposed sentence. As we have previously noted, this authority is limited to the judiciary. See Rose 92 A.3d at 910-11. Accordingly, neither the administrative agent nor any member of the DOC had the power to determine when Parrillo had completed his probationary period.

Moreover, in Romano v. Retirement Board of the Employees Retirement System of Rhode Island, 767 A.2d 35, 37-38 (R.I. 2001), a retiree sought to invoke the equitable estoppel principle against the state which, through a retirement system counselor, had provided wrong information regarding the retiree's retirement benefits. The retiree's claims failed because neither the counselor nor the board's executive director possessed any authority to "vary or contradict" state law. Id. at 39 (contrary to information the retiree received from the state employee, G.L. 1956 § 36-10-36(b) specifically provided, in relevant part, that "[p]ension payments shall be suspended" when a state retiree is employed or reemployed by a municipality). Similarly, here, any statement that Parrillo's probationary period had ended in 2009, was not only in direct contradiction to the judicially-imposed thirty-year sentence, it also contradicted §§ 42-56-24 and 12-19-2(a), including the effect these credits had on the length of Parrillo's sentence.

- 15 -

Moreover, the only evidence before the Superior Court was the 2009 letter sent from the DOC administrative officer and Parrillo's affidavit in which he attested that "he conducted [him]self at all times as though [he] was not on probation." Parrillo, who bore the burden of proving the elements of equitable estoppel, presented no evidence that the DOC employee intended to induce any specific behavior on his part, nor that his conduct as it relates to the 2011 incident was somehow induced by the 2009 DOC letter. See Faella, 111 A.3d at 357. Our law is clear that no element of the equitable estoppel claim can be left to speculation, and, in any event, we agree with the hearing justice that to even attempt to apply the doctrine of equitable estoppel to these facts is "absurd." See id. It would be preposterous for Parrillo to claim that a letter informing him that his probationary period had ended in 2009 induced him to commit the alleged felony assault in 2011, let alone for him to claim that the DOC employee actually intended to induce him to commit such act as the doctrine of equitable estoppel requires.[17]

Accordingly, it is our opinion that the hearing justice's denial of Parrillo's equitable estoppel claim was not an error of law.

## C

### Due Process

Parrillo's equitable estoppel argument is firmly predicated upon principles of due process. He first raised a due-process argument in his memorandum of law in opposition

[17] Parrillo attempts to shoehorn his criminal conduct into the precepts of equitable estoppel by claiming that he "does not argue detrimental reliance on the [s]tate's representation in committing a new crime; the detrimental reliance was that regardless of what he may have done, he would not suffer a resulting probation violation, and the consequent further punishment for an old crime–a matter wholly separate from the consequences of the underlying offense conduct." Although we reject his efforts to invoke the doctrine of equitable estoppel, this argument may be more appropriate on remand. See Part III, C, infra.

to the state's notice of probation violation submitted to the Superior Court, in which he asserted that "he ha[d] not been given fair warning that certain conduct [would] subject him to the penalty associated with a probation violation. The due process transgression [was] thus complete." Although the hearing justice rejected Parrillo's equitable estoppel contentions, the hearing justice did not address the due-process argument, ruling rather that Parrillo's probationary term had terminated under the clear terms of the original sentence.

Before this Court, Parrillo again emphasizes the underpinnings of his estoppel argument, stating that "[t]he application of principles of estoppel in the circumstances present here is a straightforward matter of due process" and that "the principles of fundamental fairness, which include due process and fair notice, could not be more in play."[18] Because the trial court decided the case on other grounds, however, we are of the opinion that this case should be remanded to the Superior Court so that a hearing justice may address Parrillo's contentions in the first instance, making such findings of fact and conclusions of law as he or she sees fit. We do not intend hereby to restrict the Superior Court should it deem it just to otherwise resolve this probation violation proceeding.

---

[18] Parrillo also indicates that "[t]his issue was thoroughly explicated not long ago by the Massachusetts Supreme Judicial Court in Commonwealth v. Ruiz, 453 Mass. 474, 903 N.E.2d 201 (2009)."

## IV

## Conclusion

For the reasons stated herein, we vacate the order of the Superior Court and remand for further proceedings consistent herewith. The record shall be returned to the Superior Court.


**Justice Flaherty with whom Justice Robinson joins, dissenting.** I depart from the majority's interpretation of G.L. 1956 § 42-56-24 and G.L. 1956 § 12-19-2, and would affirm the Superior Court's decision that Parrillo's probation had already ended when he was charged with assault. Accordingly, I respectfully, but vigorously, dissent from the majority's opinion.

A little more than two years ago, in Rose v. State, 92 A.3d 903 (R.I. 2014), this Court was faced with an issue identical to the one presented in the case at bar, except for one critical fact. In Rose, the majority held that good-time and time-served credits could act only to reduce the time a defendant spent incarcerated, but could not reduce a sentence below a statutorily imposed mandatory minimum. Id. at 908, 912. The majority in Rose specifically left for another day the issue of what to do when a defendant's sentence is not up against a mandatory minimum. Id. at 913. That day has arrived.

For the same reasons set forth in my dissent in Rose—which Justice Robinson also joined—I do not agree with the majority's opinion that extends Rose to all probationers. In Rose, I dissented because, in my opinion, the majority incorrectly interpreted two statutes: § 42-56-24 and § 12-19-2. Rose, 92 A.3d at 914, 918. Specifically, it was my opinion that, when the majority interpreted § 42-56-24, it "focuse[d] on the word 'sentence' and equate[d] 'sentence' with 'imprisonment.'" Rose,

92 A.3d at 914. It was my view then, and it is now, that "nothing cited to by the majority contravene[d] my conclusion that good-time credits reduce the entirety of [the] sentence and not simply the period of incarceration." Id. I also found fault with the majority's interpretation of § 12-19-2 on nearly identical grounds. Rose, 92 A.3d at 919. That statute mandates that a "sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * * *." Section 12-19-2(a). Like § 42-54-24, § 12-19-2 speaks of reducing the "sentence," as opposed to the period of incarceration.

Now, the majority extends the holding in Rose to all probationers, finding that good-time and time-served credits do not reduce the length of a defendant's overall sentence, irrespective of whether such a reduction would bring that sentence below a mandatory minimum. I disagree because the statutes clearly say that good-time credits should "be deducted from the term or terms of sentence of that prisoner * * *" and time-served credits should be "reduced" from the sentence. Both statutes are clear and unambiguous. Notably, neither statute limits deductions or reductions to only the time of incarceration.

The gravamen of my dissent lies in the distinction between "sentence" and "imprisonment." In addition to incorporating my dissent in Rose, I also observe that "sentence" is defined as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer." Black's Law Dictionary 1569 (10th ed. 2014). Meanwhile, "imprisonment" is "[t]he act of confining a person, [especially] in a prison." Id. at 875. Accordingly, it is my opinion that the only conclusion that can be drawn is that, when the General Assembly enacted

the legislation in question and used the term "sentence," it was referring to the entirety of the judgment imposed against the defendant—i.e., both the period of incarceration and the probationary period. And, when the General Assembly referred to "imprisonment," it spoke of only the period in which a defendant is incarcerated. Thus, when the General Assembly mandated that good-time credits be "deducted" from a defendant's "sentence" and that a defendant's "sentence * * * shall be reduced" by the amount of time served while awaiting trial and sentencing, I am led to what I consider to be the obvious conclusion that the General Assembly intended good-time and time-served credits to act to reduce the entirety of a defendant's sentence, and not just that defendant's period of incarceration.[19]

Despite my dissent in Rose, I accept, as I must, that the holding in that case is now the law in this state. Nevertheless, I do not believe that the holding in Rose is applicable here because the issue before us is simply not the same; the reductions that Parrillo received to his sentence did not bring that sentence below a mandatory minimum. The majority's opinion in Rose was, in substantial part, driven by the conflict between G.L. 1956 § 11-37-8.2, which imposed a mandatory minimum sentence, and §§ 42-56-24 and 12-19-2, the good-time and time-served statutes. Here, no such conflict exists. Accordingly, it is my opinion that the statutory interpretation that I endorsed in Rose should control; under that interpretation, Parrillo's probation would have ended by the time of his December 2011 arrest. As a result, it is my opinion that the order of the Superior Court should be affirmed.

---

[19] The majority says that the Department of Corrections has no authority to reduce a sentence, but it is the General Assembly that set the sentence by statute. Through the enactment of G.L. 1956 § 42-56-24 and G.L. 1956 § 12-19-2, the General Assembly has modified the sentence, also by statute.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Anthony Parrillo. |
| **Case Number** | No. 2013-203-M.P.<br>(P1/82-500A) |
| **Date Opinion Filed** | May 3, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For State:<br><br>Lauren S. Zurier<br>Department of Attorney General |
| | For Defendant:<br><br>Anthony M. Traini, Esq.<br>John B. Harwood, Esq. |